# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRED PRICE,

Plaintiff,

v.

S.R. CUNNINGHAM, et al.,

Defendants.

_______________________________________/

CASE NO. 1:08-cv-00425-AWI-YNP PC

ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE

(Doc. 1)

RESPONSE DUE WITHIN 30 DAYS

Plaintiff Fred Price("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is currently incarcerated at Salinas Valley State Prison in Soledad, California. However, the events described in Plaintiff's complaint occurred while Plaintiff was incarcerated at the California Correctional Institution in Tehachapi, California ("CCI-Tehachapi"). Plaintiff is suing under section 1983 for the violation of his rights under the Eighth and Fourteenth Amendments. Plaintiff names S.R. Cunningham, B. Gamblin, J. Hartman, Mullins, J. Mack, K.L. Large, E. Sailor, Linker, S. Hopkins, M. Carrasco, F. Gonzalez, N. Grannis, J. Ortega, D. Zanchi, and Muth as defendants. For the reasons set forth below, the Court finds that Plaintiff states cognizable claims against Defendants Cunningham and Mullins for deliberate indifference to a serious threat to Plaintiff's safety and use of excessive force in violation of the Eighth Amendment and Plaintiff states a cognizable claim against Cunningham for retaliation against Plaintiff's exercise of his First Amendment rights. Plaintiff's remaining claims are not cognizable. Plaintiff will be

ordered to either notify the Court of his willingness to proceed only on the cognizable claims, or to file an amended complaint that cures the deficiencies identified in this order.

**I. Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II. Background**

On November 9, 2006, Plaintiff was told by inmate Foster, Plaintiff's cell-mate at the time, that if he did not move, his life would be in danger. Plaintiff informed Defendants Cunningham and

Mullins about the threat. Plaintiff requested a cell move but Cunningham and Mullins laughed at him and denied his request. On November 10, 2006, Plaintiff told John Doe #1 and #2 that he needed a cell move. Plaintiff was told to contact "the regulars."[1] (Compl. 9.) On November 11, 2006, Plaintiff asked Defendant Linker for a cell move and explained why. Defendant Sailor said he had a cell in another building and would look into it, but Plaintiff was never moved. Plaintiff also informed Defendant Gamblin about the threat, but Plaintiff was not moved.

On November 12, 2006, inmate Foster packed Plaintiff's property and told Defendant Sailor that Plaintiff needed a cell move because Plaintiff would be in danger. Plaintiff agreed. Defendant Sailor told them that there was nothing he could do. Plaintiff told Defendant Hartman about the problem, who in turn summoned Defendant Mack. Another inmate agreed to allow Plaintiff to move into his cell and Mack told Plaintiff that he would be moved.

Later that day, Plaintiff was still not moved from his cell. Foster "stated that Plaintiff thinks this prison life is a joke." (Compl. 11.) Foster grabbed a shiny object from between his mattress which prompted Plaintiff to start kicking and hitting the cell door. The control booth officer ordered Plaintiff to stop kicking the door. Cunningham and Hartman also arrived and ordered Plaintiff to stop kicking the door. Plaintiff attempted to explain that Foster had a weapon, but Cunningham told Plaintiff that he would not be moving. Plaintiff told Foster "to do what he said he would do" but Foster said he would do it later. Cunningham then opened the food slot and ordered Plaintiff to cuff up. Cunningham closed the food slot and nodded at inmate Foster. Foster then stood up and punched Plaintiff in the forehead. Plaintiff struggled with Foster while Cunningham stated "again, again." (Compl. 12.) Cunningham then opened the cell door and ordered Foster to cuff up. Cunningham entered the cell and pepper sprayed Plaintiff.

Plaintiff filed an inmate appeal regarding the incident on November 13, 2006. Plaintiff's appeal was partially granted and an investigation was conducted. However, it was "denied as to Plaintiff['s] claims" by Defendants Gonzalez and Carrasco. (Compl. 13.) Defendant Grannis denied Plaintiff's appeal at the director's level.

---

[1] Plaintiff does not explain who "the regulars" are.

After the incident, Plaintiff and Foster were removed from their cell. Defendant Sailor later searched the cell and found a weapon, which was claimed to belong to Plaintiff. On January 18, 2007, Plaintiff was found guilty of a rules violation for having possession of an inmate manufactured weapon. Plaintiff's hearing was conducted by Defendant Large. Plaintiff claimed that either Defendant Cunningham or Sailor planted the weapon, or arranged for other inmates to plant the weapon. Plaintiff alleges that Sailor made inconsistent statements about the weapon being found in Plaintiff's cell and the cell being "capped," meaning the cell was not to be opened until it was released by a supervisor. Plaintiff filed an inmate appeal about the rules violation. Plaintiff claims that Defendants Carrasco, Gonzalez, and Grannis denied Plaintiff's appeal.

On November 16, 2006, Defendant Muth submitted a report that Plaintiff complains contained information that should have been deemed confidential. On March 2, 2007, Plaintiff was placed in the administrative segregation yard cages. Plaintiff was placed in a cage next to Foster. Foster told Plaintiff that he received Plaintiff's administrative appeals from other correctional officers. Plaintiff claims that the information in the reports and appeals that Foster obtained would label Plaintiff as a snitch and put Plaintiff in danger of being harmed or killed. Foster made photo copies of this information and distributed it to other inmates. Plaintiff began receiving threats from other inmates based on this information. Plaintiff claims that this information was deliberately given to Foster by "Defendants' agents" because of the staff complaint that Plaintiff filed on November 13 and 16. (Compl. 21.) Plaintiff filed an inmate appeal regarding the incident which was denied by Carrasco and Grannis.

On November 16, 2006, Defendant Traynham prepared a lock up order based on the report that claimed a weapon was found in Plaintiff's cell. Plaintiff claims that the order was based on false information because Plaintiff was placed in the administrative segregation unit when the weapon was found in Plaintiff's old cell. Plaintiff complains that he should have received the lock up order no later than 48 hours after it was written, but did not receive it until 11 days after it was written. Plaintiff also complains that Defendants Carrasco, Conzalez and Grannis failed to correct the errors that occurred, presumably through Plaintiff's administrative appeals.

///

On March 6, 2007, Defendant Hopkins found Plaintiff guilty of a rules violation report for assaulting inmate Foster based on the incident that occurred on November 12, 2006. Plaintiff complains that Hopkins ignored evidence that Plaintiff had informed staff that his safety was in danger and that staff refused to prevent the assault from occurring. Defendants Carrasco, Gonzalez, and Grannis denied Plaintiff's appeals on the matter.

Plaintiff also complains that Cunningham violated his rights by giving away Plaintiff's property to another inmate in retaliation for a staff complaint filed by Plaintiff. Cunningham gave some of Plaintiff's property to inmate Foster after they were removed from their cell. Plaintiff filed an inmate appeal requesting evidence, such as inmate Foster's canteen receipts, property card, and quarterly package receipts. Plaintiff claims that the evidence would have proved that Foster was in possession of Plaintiff's property. Plaintiff complains that Defendants Ortega, Zanchi, Carrasco, and Grannis refused to provide this evidence.

## III. Discussion

### A. Eighth Amendment Claims

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive

risk to inmate health or safety". Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

**1. Failure to Protect and Use of Excessive Force**

Plaintiff claims that Defendants were deliberately indifferent because they were informed of a threat to Plaintiff's safety and failed to protect Plaintiff. "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837.

Plaintiff told Defendants Cunningham and Mullins that his cell-mate threatened his life. Cunningham and Mullins laughed at Plaintiff and denied his request for a cell move. Cunningham and Mullin's response to Plaintiff suggests that they were deliberately indifferent to a threat to Plaintiff's safety. Plaintiff further alleges that Cunningham was not only present when inmate Foster attacked Plaintiff, but also enabled Foster to attack Plaintiff by handcuffing Plaintiff before Foster punched him, and ratified Foster's conduct by nodding at him before the attack and stating "again, again" during the attack. Plaintiff also claims that Cunningham pepper sprayed Plaintiff after the attack. Plaintiff states cognizable claims against Defendants Cunningham and Mullins for deliberate indifference to a serious threat to Plaintiff's safety and use of excessive force in violation of the Eighth Amendment.

Plaintiff told John Doe #1 and John Doe #2 that he needed a cell move. John Doe #1 and #2 told Plaintiff to "contact the regulars." It is unclear what it means to "contact the regulars." Furthermore, Plaintiff does not allege that he informed John Doe #1 and #2 about the reasons for needing a cell move. Thus, it is not clear whether they were aware of the threat to Plaintiff's life,

and it is unclear whether directing Plaintiff to "contact the regulars" is a deliberately indifferent response if they were aware. Plaintiff fails to state any cognizable claims against Defendants John Doe #1 and John Doe #2.

Plaintiff told Defendant Linker that he needed a cell move and explained why. Plaintiff does not allege what Defendant Linker's response was. Plaintiff also told Defendant Gamblin about the threat and need for a cell move, but does not allege what Gamblin's response was. Plaintiff also told Defendant Sailor about his need for a cell move. Sailor told Plaintiff about a cell in another building that might be available and told Plaintiff he would look into it. Later, Sailor told Plaintiff that there was nothing he could do and advised Plaintiff to talk to the third watch. Plaintiff does not repudiate Sailor's statement and does not allege that it was within Sailor's authority or capability to do anything more to protect Plaintiff. Given the facts alleged, that Sailor said he would look into the situation, and later concluded that there was nothing he could do, there is no indication that Sailor's response was deliberately indifferent. Plaintiff does not allege what Gamblin or Linker's response was, or what their response should have been. Thus, it is unclear whether they acted with deliberate indifference. Plaintiff fails to state any cognizable claims against Defendants Linker, Gamblin, or Sailor.

Plaintiff spoke with Defendant Hartman, who informed Plaintiff that he was aware of the problem. Hartman then summoned Defendant Mack. Hartman and Mack summoned another inmate to Plaintiff's cell who indicated that he would allow Plaintiff to move into his cell. Mack told Plaintiff that he would be moved. Plaintiff does not indicate that Hartman or Mack's statements were lies, or that their efforts to move Plaintiff was a charade. Thus, the allegations demonstrate that both Hartman and Mack took steps to protect Plaintiff and their response was not deliberately indifferent. The fact that their response was not swift enough because Plaintiff was attacked before he was moved does not make Hartman and Mack liable for violating the Eighth Amendment. There is no indication that Hartman and Mack deliberately delayed their response so that Plaintiff would be attacked by Foster. Plaintiff also alleges that Hartman responded with Defendant Cunningham when Plaintiff started kicking the door to his cell and ordered Plaintiff to stop kicking the door. Cunningham would later be involved in allowing Plaintiff to be assaulted by Foster, but it is unclear

from Plaintiff's allegations whether Hartman was still at Plaintiff's cell when this happened, or whether Hartman was otherwise aware of the assault, had a reasonable opportunity to prevent it, and failed to. Plaintiff fails to state any cognizable claims against Defendants Hartman or Mack.

Plaintiff claims that he filed an inmate appeal about the attack which was processed by Gonzalez, Carrasco, and Grannis. An investigation was conducted, "[b]ut denied as to Plaintiff['s] claims."[2] An appeals coordinator who denies an inmate appeal complaining about past and non-ongoing conduct does not make them liable for the misconduct complained of. By the time that Gonzalez, Carrasco and Grannis reviewed Plaintiff's inmate appeal, there was nothing they could do to prevent Foster's attack from occurring. Plaintiff does not otherwise have a constitutional right to any compensatory relief available through the inmate appeal system. Plaintiff fails to state any claims under the Eighth Amendment against Defendants Gonzalez, Carrasco, or Grannis.

**2. Use of Confidential Information**

Plaintiff claims that unidentified prison officials provided inmate Foster with confidential information that made him a target for threats from other inmates. Plaintiff claims Defendant Muth authored a report that contained confidential information, though Plaintiff does not describe that information was, or why it should be confidential. Plaintiff claims that Foster received inmate appeals that were filed by Plaintiff along with an "I.E. statement." (Compl. 21.) Plaintiff claims that the information in those appeals and the report would label Plaintiff as a snitch if given to other inmates. Plaintiff further claims that the information should have been deemed confidential. Foster made photocopies of these documents and gave them to other inmates. Plaintiff then began receiving threats from other inmates based on that information. Plaintiff alleges that he filed an inmate appeal about the incident. Defendant Carrasco determined that no misconduct was committed and Defendant Grannis approved Carrasco's decision.

Plaintiff does not allege that Defendant Muth was involved in giving Foster access to confidential information. Plaintiff only alleges that Muth authored a report that contained confidential information. There is no indication that Muth was aware that the confidential

[2] It is unclear what Plaintiff means by "denied as to Plaintiff['s] claims." Presumably Plaintiff means he requested other forms of relief and was denied.

information would later be used to Plaintiff's detriment, or that Muth was otherwise in a position to prevent the confidential information from being distributed to Foster. Thus, Muth did not act with deliberate indifference. Plaintiff fails to state any cognizable claims against Defendant Muth for the violation of Plaintiff's Eighth Amendment rights.

As previously discussed, Plaintiff has no claim against Carrasco or Grannis for denying Plaintiff's appeal. Plaintiff does not allege that there was anything Carrasco or Grannis could have done to prevent the wrong that already occurred and Plaintiff has no constitutional right to any compensatory relief available through the inmate appeal system. See discussion supra Part III.A.1.

Plaintiff may have a claim against the unidentified defendants who provided the confidential and dangerous information to Foster. However, it is unclear what "confidential information" was contained in the inmate appeals that would label Plaintiff as a snitch. Plaintiff alleges that the documents given to Foster were in relation to Plaintiff's complaint that correctional officers failed to remove Plaintiff from his cell and allowed Foster to attack him. It is unclear why those complaints would label Plaintiff a "snitch" or why other inmates would retaliate against Plaintiff for filing a complaint against correctional officers. Further, Plaintiff does not allege that any of the inmates ever had the opportunity to harm Plaintiff. Plaintiff was held in administrative segregation when the information was disseminated. If Plaintiff was held in segregation and the inmates who threatened Plaintiff had no reasonable opportunity to effectuate their threats, there was no actual threat to Plaintiff's safety and the unidentified prison officials did not violate Plaintiff's Eighth Amendment rights.

Even assuming Plaintiff can cure these deficiencies through amendment, the Court also notes that these claims arise from a separate incident from Plaintiff's claim that prison officials ignored the threats to his safety posed by being housed in the same cell as inmate Foster. Thus, if Plaintiff opts to amend and raise both claims in the amended complaint, Plaintiff must demonstrate how the Federal Rules of Civil Procedure permit the joinder of his claims. See discussion infra Part III.D.

**B. Fourteenth Amendment Claims**

Plaintiff claims that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause protects prisoners from being deprived of liberty

without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In determining whether a hardship is sufficiently significant enough to warrant due process protection, the Court looks to (1) whether the challenged condition mirrored those conditions imposed upon inmates imposed upon inmates in administrative segregation and protective custody and is thus within the prison's discretionary authority to impose, (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will invariable affect the duration of the prisoner's sentence. Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

**1. Inmate Appeals**

Plaintiff claims that his due process rights were violated when his inmate appeals were denied. Inmates have no liberty interest in the processing of an inmate appeal because inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Any delay, denial, or screening-out of Plaintiff's inmate appeals, even if erroneous, did not result in an "atypical and significant hardship". Plaintiff has no protected liberty interest in the vindication of his administrative claims. Thus, Plaintiff has no cognizable claims under the due process clause against appeals coordinators who denied his inmate appeals.

**2. Disciplinary Hearings**

Plaintiff claims that his due process rights were violated when he was found guilty of a rules violation for having possession of an inmate manufactured weapon and found guilty of a rules violation for assaulting inmate Foster. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least

24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

There is no allegation in Plaintiff's complaint that he was denied any of the procedural requirements set forth in Wolff. Plaintiff has not alleged that he was not given written notice of the charges, at least 24 hours between written notice and the time of the hearing, a written statement by the fact finders of the evidence they relied on and the reasons for taking disciplinary action, the right to call witnesses and present documentary evidence in his defense, or legal assistance because Plaintiff is illiterate or the issues were legally complex. Plaintiff's complaint is that the rules violation was false and that much of the evidence presented by prison officials was false or inconsistent. The Due Process Clause does not provide a guarantee against false dispositions in disciplinary hearings. The Due Process Clause guarantees certain procedural rights at those hearings. If Plaintiff receives those procedural guarantees, he has no due process claim, regardless of whether the outcome of the disciplinary hearing is erroneous.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." Id. at 455-56

(emphasis added). However, the "some evidence" standard does not apply to where a prisoner alleges the rules violation report is false and retaliatory. Hines v. Gomez, 108 F.3d 265, 268-69 (9th Cir. 1997).

Here, prison officials presented "some evidence" that supports the decision made at the disciplinary hearing. With respect to the weapon possession charge, Defendant Sailor claimed that he found a weapon in Plaintiff's property. Plaintiff argues that Sailor's statements were inconsistent or false for a variety of reasons, such as the fact that Plaintiff was not occupying the cell at the time because he was in administrative segregation (though Plaintiff does not dispute that his property was still in the cell), that his cell should have been "capped" and prison officials should not have removed his property until it was uncapped, and that Plaintiff never received a report that his cell was capped/uncapped. With respect to his assault charge, there was "some evidence" based on the fact that Plaintiff kicked Foster. Plaintiff complains that prison officials ignored or rejected his argument that Foster threatened him and Plaintiff acted in self defense. A section 1983 action is not the proper avenue for appealing a decision made at a disciplinary hearing. The Court will not decide whether Plaintiff's account is more persuasive than the prison officials who testified otherwise. The facts allege show that Plaintiff received all the procedural rights due to him under Wolff and that the disciplinary decision was supported by "some evidence." Plaintiff fails to state any claims under the Due Process Clause against any Defendants in relation to receiving his rules violation.

**3. Lock-up Order**

Plaintiff claims that his due process rights were violated when Defendants failed to issue a lock-up order for administrative segregation within 48 hours, as required by regulations. The violation of a prison regulation is not ipso facto a violation of Plaintiff's due process rights. See Wilkinson v. Austin, 545 U.S. 209, 222 (2005) (liberty interests are not created by mandatory language in prison regulations, but instead are found by comparing prison conditions to the ordinary incidents of prison life); Sandin v. Conner, 515 U.S. 472, 483-484 (1995) (abandoning prior methodology of finding liberty interests from mandatory language in prison regulations). The failure to receive the lock-up order within the mandated 48 hours will only implicate a liberty interest if it is an "atypical or significant hardship." There is no indication that the failure to receive the order

within regulation time limits is atypical or significant. Further, having already determined that Plaintiff's complaint fails to state any due process claims for Plaintiff's rules violation, the Court finds that Plaintiff has no due process claim based on the issuance of a lock-up as a consequence of that rules violation. See discussion supra Part III.B.2. Plaintiff fails to state any claims against any Defendants under the Due Process Clause in relation to his lock-up order.

**4. Property**

Plaintiff claims that his due process rights were violated when Defendant Cunningham gave some of Plaintiff's property to inmate Foster. The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir.1974). Whether a deprivation of property rises to the level of a constitutional violation depends on whether the deprivation was negligent or unauthorized. A negligent deprivation of property does not violate the Due Process Clause when adequate post-deprivation remedies are available because pre-deprivation process is impracticable since the state cannot know when such deprivations will occur. Hudson v. Palmer, 468 U.S. 517, 533 (1984). Similarly, an intentional, but unauthorized, deprivation of property does not violate the Due Process Clause when adequate post-deprivation remedies are available. Id. California Law provides an adequate post-deprivation remedy for any unauthorized property deprivations. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Plaintiff claims that Defendants Ortega, Zanchi, Carrasco and Grannis violated his due process rights because they denied Plaintiff's request for evidence that would have proven that Foster was in possession of Plaintiff's property. The failure to grant Plaintiff's inmate appeal is not a violation of Plaintiff's due process rights. See discussion supra Part III.B.1.

Cunningham's actions in giving Plaintiff's property to Foster also did not violated Plaintiff's due process rights. Plaintiff claims that Cunningham intentionally gave Plaintiff's property to Foster in retaliation for staff complaints that Plaintiff had filed. Plaintiff's allegations are clear that Cunningham's actions were not authorized. Plaintiff does not allege that there are prison regulations that mandated that his property be given to Foster. Thus, Plaintiff has no claim under section 1983

and Plaintiff's only relief for the deprivation of his property is California's post-deprivation remedies. However, Plaintiff does state a claim against Defendant Cunningham for retaliation against Plaintiff's exercise of his First Amendment rights. See discussion infra Part III.C. Plaintiff fails to state any due process claims against any Defendants for the deprivation of his property.

**C. Retaliation Claim**

Plaintiff claims that Defendant Cunningham retaliated against him for filing staff complaints by giving Plaintiff's property away to inmate Foster. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff claims that Cunningham took adverse action against Plaintiff by giving his property to inmate Foster. Plaintiff further claims that Cunningham did so because of Plaintiff exercised his protected First Amendment right to file staff complaints. Although Plaintiff does not specifically allege a chilling effect, the Ninth Circuit has suggested that alleging harm is sufficient "since harm that is more than minimal will almost always have a chilling effect." Rhodes v. Robinson, 408 F.3d 559, 568 n.11 (9th Cir. 2005). Finally, giving Plaintiff's property away does not advance any apparent legitimate correctional goal. Plaintiff states a cognizable claim against Defendant Cunningham for retaliation against Plaintiff's exercise of his First Amendment rights.

**D. Unrelated Claims**

Plaintiff raises several unrelated claims in his complaint. A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple

claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a) allows a plaintiff to add multiple parties to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions. However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act.[3] 28 U.S.C. § 1915(g).

The Court notes that Plaintiff's complaint describes several distinct incidents: Plaintiff's requests for a cell move being denied, Plaintiff being found guilty of a rules violations, Plaintiff not receiving a proper lock-up order, and Plaintiff's property being given away. Some of these claims are not cognizable. To the extent that Plaintiff can cure the non-cognizable claims through further leave to amend, Plaintiff must also demonstrate how these claims may be raised in a single complaint pursuant to the Federal Rules of Civil Procedure. Since these are all factually distinct incidents, Plaintiff may not raise them in the same lawsuit unless permitted by Rule 18(a) (permitting multiple claims against the same defendant). Plaintiff's claims for deliberate indifference to a serious threat to his safety and excessive force against Defendants Cunningham and Mullins may be brought in the same lawsuit as his retaliation claim against Defendant Cunningham under Rule 18(a) since Cunningham is a defendant in both claims. Although Plaintiff attempts to sue a common set of appeals coordinators in all his claims (Defendants Carrasco, Gonzalez, and Grannis), none of Plaintiff's claims against these Defendants are cognizable. Rule 18(a) cannot serve as the basis for joining unrelated claims if the claims against the common Defendants are not cognizable.

**E. Use of Exhibits**

Plaintiff has attached over 100 pages of exhibits to his complaint. While exhibits are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). Plaintiff is advised that under Rule 8 of the Federal

---

[3]The Prison Litigation Reform Act allows prisoners to file complaints without prepayment of the filing fee unless they have previously filed three frivolous suits as a prisoner. 28 U.S.C. §1915(a),(g).

Rules of Civil Procedure, Plaintiff is only obligated to provide "a short and plain statement of [his] claim", Plaintiff is not obligated to prove the allegations in his complaint at this stage. Attaching a large number of exhibits to a complaint will result in the complaint being dismissed for failure to comply with Federal Rule of Civil Procedure 8, as it will render the complaint to be neither a "short" nor "plain" statement of Plaintiff's claims.

In addition, Plaintiff may not attach exhibits to his complaint for the purpose of using them as evidence at later stages in litigation. This court will not serve as a storehouse for Plaintiff's evidence. Evidence should not be submitted to the court until this action reaches an appropriate stage in litigation for the submission of evidence, such as in response to a motion for summary judgment, at trial, or when specifically requested by the court. Further, if and when this action does reach an appropriate stage in litigation for the submission of evidence, Plaintiff will not be able to refer to exhibits attached to his complaint as evidence. Evidence must be submitted at the proper time and under the proper procedures. Attaching exhibits to the complaint is not the proper procedure for admitting evidence for the purpose of proving Plaintiff's allegations.

Further, the Court will not permit Plaintiff to rely exclusively on exhibits for the presentation of the critical facts to his case. Rule 8 requires Plaintiff to provide a "short and plain" statement of his claims. Plaintiff may not attach a large number of exhibits to his claims with the expectation that the Court will read the exhibits and extract the necessary factual pieces to construct a cognizable claim on Plaintiff's behalf. The burden of presenting the facts of his case in a "short and plain" manner must be carried by Plaintiff--the Court will not do the work for him. Although the Court will liberally construe Plaintiff's complaint, sifting through over 100 pages of unidentified prison documents and formulating claims on Plaintiff's behalf crosses the line between liberal construction and advocating on Plaintiff's behalf. To the extent that the factual deficiencies in Plaintiff's claims are cured by facts revealed in his exhibits but not in the body of his complaint, Plaintiff is advised that he should file an amended complaint that specifically alleges those facts instead of relying exhibits to present those facts.

///

///

**IV. Conclusion and Order**

Plaintiff's complaint states cognizable claims against Defendants Cunningham and Mullins for deliberate indifference to a serious threat to Plaintiff's safety and use of excessive force in violation of the Eighth Amendment. Plaintiff also states a cognizable claim against Cunningham for retaliation against Plaintiff's exercise of his First Amendment rights. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff two (2) summonses and two (2) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Cunningham and Mullins for deliberate indifference to a serious threat to Plaintiff's safety and use of excessive force, and against Defendant Cunningham for retaliation; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated: February 19, 2010** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE